The first of the remaining cases is MONDIS TECH v. INNOLUX and I think we have the 1304 case, 2012-1304. And Mr. Brogan. May it please the Court, Your Honor. My name is Jim Brogan. I represent the appellants, INNOLUX Corporation, formerly CHIMEI INNOLUX Corporation, and then it's U.S. INNOLUX Corporation. The District Court, Your Honors, erred here by applying a willfulness enhancement to the ongoing royalty rate without first doing the predicate analysis that's been required by this Court. To find willfulness, it's necessary first to find, as a matter of law, that the accused infringer here has acted without a reasonable expectation of the possibility of prevailing. Okay. Just so I understand about this argument that you're making. Firstly, two questions. One, didn't you waive this argument by agreeing that willfulness ought to be considered in the context of a reasonable royalty? And two, are you saying that you only consider the willfulness inquiry only exists with respect to prospective reasonable royalty if you found willfulness on the merits, underlying merits case? Is that the point you're trying to make here or not? I'm going to ask both of those in order. With respect to the first issue, I do not believe that we waived this issue because we pointed out to the District Court that under Seagate, the court would need a finding of objectively baselessness with respect to the appeal in order to find willfulness going forward. That analysis was never done, and therefore, to apply willfulness to the ongoing royalty was, in our view, an error as a matter of law. With respect to your second question, the court is entitled to look at willfulness if it found willfulness before the District Court, if it found it as part of the underlying trial proceedings, which it did not do here. There was no willfulness finding. Is that really the case? Maybe you and I are just understanding this whole rubric differently. But it seems to me that when you're talking about willfulness after judgment, after you've been found to infringe a valid patent, that's not the kind of willfulness you're talking about in the underlying merits case. Prospectively, it will be different. You've been found to infringe, and therefore, it's going to be willful infringement. You look at the conduct post-verdict as to whether or not that will be willful. I'm not sure why I see that a prerequisite to that is necessarily that in the previous merits case, you were found to willfully infringe. Do you understand my question? I think I do. In the Amato case, this court found that it was improper to treble the ongoing royalty rate going forward simply upon finding that, one, there was a finding of validity, and two, there was a finding of infringement. It found that was an improper trebling, an improper increase due to alleged willfulness. That case is perfectly consistent with requiring that a party show an objectively baseless position before enhancing for willfulness going forward. Why? There could be willfulness going forward even in the absence of past willfulness. Even if there was no willful infringement beforehand in the underlying merits case, in the future, you've been found to infringe a valid patent. You've got a judgment by this court that you're infringing a valid patent. So we're talking about conduct of infringement post that period, subsequent to that. Why? I mean, there's no objectively baseless thing. You can't say, oh, I think we have a defense. We're not infringing. The patent's invalid. You've already been found to infringe and that the patent's valid. So why isn't that an entirely different inquiry and not relevant to, connected to whether or not there was prior willfulness? To the extent that this court would find that the claims, for example, at issue here are either not infringed based on a claim construction rationale or invalid based on the prior art that's been submitted, then the party's position going in would be reasonable and could have a reasonable expectation of success, just as was the case at the district court level. And so Bard II, I believe, says you have to look at willfulness at the time of the occurrence. And so what you need to do is look at – you can look at the changed circumstances of the parties, but with respect to the willfulness issue, you still need to look at, as a matter of law, whether the conduct that you're looking at is now objectively baseless. And it could be in some situations that it is, but I don't believe it is in this case. And that analysis was never done. I'm talking about looking at whether the conduct post-verdict is objectively baseless, not pre-verdict. That's correct, Your Honor. Right. That's our view. And so we believe that having failed to perform that initial analysis to determine whether the conduct post-verdict was indeed objectively baseless, there's no basis for applying the inquiry. Well, there's no conduct that necessarily happened. You're talking about a prospective royalty. So you're talking about what's going to happen in the future, right? Which includes the appeals process, yes, Your Honor. And so having not made that decision, there is no basis for applying the trebling or the increase of royalty rate going forward. Similarly, with respect to the application of that determination to successors in sign, this is a difficult area of the law. Let's go back a little bit, though. There was no injunction granted here, right? There was no injunction. No one requested. Correct. And it was accepted that there would be continuing practice of the invention with an ongoing royalty. Is it your argument that that negates post-verdict willfulness? That is part of the argument, yes, Your Honor. With respect to allowed conduct with an agreed royalty, there's no longer a willful component to infringement there. It's now authorized conduct. It's been authorized by the district court. In other words, it ceases to be willful. That's correct. It may have been willful earlier, but if it's accepted that you would continue to practice the invention on payment of a royalty, that is no longer willful. That's correct, Your Honor. But the question is how to assess the royalty rate, given that in the absence of a royalty right, if the judge just said, I mean, I don't know that he absolutely has to impose a royalty right. damages for that infringement because you've already got a judgment of infringement against you of what's been concluded to be a valid patent, right? I mean, that's why willfulness has a play here, right? Because prospectively, in the absence of an injunction of reasonable royalty, this is going to be as close to willful infringement as you can get, correct? You're correct. In the absence of paying the reasonable royalty, you are correct. Once the reasonable royalty has been ordered and the conduct is authorized, then it's no longer a willful infringement because it's actually authorized conduct. Right, exactly. Sure. I don't think anybody's disputing that. But the enhancement for the previous willfulness should remain as part of the ongoing royalty. If there was a finding of willfulness before the district court, I think that answer would be yes. But here where there was no finding of willfulness that was sustained by the district court, then I don't believe that's the case. And when you look at that, if you think in terms of Section 284 that's really there to provide reasonable compensation, which is what we're talking about here for the patentee, reasonable compensation for the activity going forward. Well, reasonable compensation is if the judge decided, I'm not going to impose the reasonable royalty. I mean, it's up to you. Try to settle it. If you can't settle it, you're out for it. And then you go ahead and infringement. Is there a little doubt that it would be willful infringement? I mean, that's why we're talking about enhancing the reasonable royalty to account for willfulness. It's because looking prospectively, your conduct in the absence of a reasonable royalty, even in the absence of an injunction, would likely be willful, and you'd be subject to treble damages, right? Is my analysis one that you agree with? The challenge with that analysis is that merely by finding infringement and validity, you would then automatically have treble damages, which is exactly what happened in the Amato case. And that's a situation where this person wasn't willing. So tomorrow, if you have no reasonable royalty, let's assume the judge had just said in your case, forget me. I don't let the parties try to resolve this themselves, right? And you go out, therefore, and you can't agree to a reasonable royalty because they're asking 20%, and you're not going to agree to that. What happens if you infringe a valid patent? Are you very subject to getting willful damages? Is there a lot of doubt that you're going to get a willfulness finding? If at that point in time it is determined that we have no – that we have an objectively baseless position, then yes. But absent that determination, then I would say no. Well, the patent's already been found valid, and it's the same parties. The likelihood that you're going to prevail on a willfulness determination prospectively is far less likely than it was a year ago when you were litigating the underlying merits of this case, correct? I understand that. In terms of changed circumstances, yes, Your Honor. In other words, reasonable royalty, once the patent has been found to have been willfully infringed, can be higher than reasonable royalty pre-judgment. Yes, assuming there is a decision that it is actually willful infringement. Assuming the predicate analysis, the legal determination of there is no reasonable expectation of ever prevailing, yes, I would agree with that. We're consuming all of your time with questions. Do you have another point you want to make? Why don't I do that in rebuttal, Your Honor? Successor royalty, we certainly understand it's well briefed. Do you want to save the rest of your time? I would like to do that, yes, Your Honor. Thank you. Mr. Black. May it please the Court. You seem to have settled on willfulness. I seem to have settled on willfulness, Your Honor. Willfully. Willfully. I think what we need to do to evaluate where we are is to go back to eBay. The problem for a plaintiff in the position of Mondes, which was a licensing agent for Hitachi for many years, and then purchased the patents to pursue the final few holdouts in this licensing program, which resulted in almost $200 million in royalties, with Enelux being the last one. The problem is that as a non-practicing entity under eBay, Mondes was not entitled to an injunction. So we did not move for injunctive relief because as an attorney, I felt an obligation to only file motions that I think have a reasonable basis. So is the other side correct, as I understand their argument, that unless there's a finding of the termination of willfulness in the merit case below, then you can't use willfulness as a factor for accounting with the reasonable prospect of royalty? No, that makes no sense whatsoever. It is obvious that the world changes, and one of the things that changed when the jury verdict came back was that there could be no reasonable doubt in the minds of the defendants that they were taking an objectively high risk of being found to infringe a valid patent. That's the standard. Now once you've got a jury verdict in, and by the way, there was a jury verdict here of willfulness. Judge Ward overturned that. Right, but there is no willfulness. There is not at this point. But going forward, the court has to determine what's the reasonable royalty rate going forward. And when there's an infringer who knows that there is a valid patent and knows that they are infringing the patent, it begs for duly to think that you could not consider willfulness in that analysis. The reasonable royalty damage provision in Section 284, Section 284 covers damages in patent cases, and it says the damages should be a minimum of a reasonable royalty up to three times the amount as determined by the court. That applies before judgment and applies after judgment. And if the court were to determine that you could not enhance damages going forward, you would be setting up a terrible precedent which would force parties in our position not to seek reasonable royalties, ongoing royalty orders in end cases, but to file new cases and do just what you suggested, file a new lawsuit, argue collateral estoppel, and then seek treble damage for willfulness. Here's my problem. Let's assume we get past the point and we say that, therefore, for the reasons you articulated, willfulness and the potential of up to treble damages is out there in the ether and it's a factor. I still have some sort of difficulty with Judge Ward's analysis here of doing Georgia-Pacific and then coming towards a whole willfulness, which really makes no sense in this context at certain levels because you've not had any infringing conduct yet. So explain to me how I can get by that. We have the same dilemma in the district court because there was no clear statement of the law on how to conduct ongoing royalty analysis. It was clearly teasable out of the cases that some enhancement was appropriate and there's several cases discussing how the parties' positions changed. But whether to consider that under Georgia-Pacific and try to shoehorn it into number 15 of Georgia-Pacific where it didn't quite fit or whether to take a different approach and say, let's do a negotiation today and then look at willfulness, which is analogous to what would happen if we brought a second suit. Those were two different ways to think about it. Judge Ward said that they actually came to the same place, and I personally was very concerned about that issue and being standing here and being told that we had done the wrong legal analysis. Well, and Judge Ward, I mean, he did a very nice job. He also referred to at least one other E.D. Texas case, which had sort of combined it with the analytical framework more with Georgia-Pacific, right? Exactly. The key here, Your Honor, is that we anticipated this problem. I was very concerned about making sure we had a legal framework for the analysis that was agreed to by the parties and that we could present the evidence and make the arguments in a legal framework that was agreed to. We clearly laid out in the briefing what we had proposed, a Georgia-Pacific analysis and a Reed factor analysis, and they agreed in their brief, they wrote, add to the second part of Mondes' two-step analysis, Mondes argues that the post-verdict rate should be enhanced based on future willfulness. While there is no dispute that a willfulness enhancement may be proper, Enelux does dispute the timing and the amount of any such enhancement. They agreed to the procedure. They agreed to the legal framework. So at this point, the only thing that the court could do— But would you agree, though, I mean, leaving aside this particular case, that the analysis of willfulness should not be kind of the separate two-part analysis that Judge Ward employed here with respect to Reed separate from Georgia-Pacific, but that it should be a little different, and if so, how? I think that there are a number of alternatives that the court has when they ultimately set the law here. The way we did it in this case I do think was appropriate. This is actually the way—this is what would have happened if we had filed a new case. There would have been a Georgia-Pacific analysis and then a willfulness analysis. I think on top of that, there may be other things that the court may direct district courts to consider in this circumstance because it's unusual, and Georgia-Pacific wasn't quite meant for this situation, and Reed wasn't quite meant for this situation, so we did the best that we could with the law as it was, got the defendant to agree, and then I think Judge Ward came to the decision that he probably would have come to under any analysis. And for that reason, we believe that the judgment of the court should be affirmed. Well, what's the alternative, though? I think the alternative would be to maybe add a Georgia-Pacific factor 16 for the ongoing royalty analysis. Well, why doesn't 15 already cover it? It could be argued to cover it, and that's what the Texas courts were doing. They were saying that the change in the bargaining power is what's reflected here. But the weird thing is, isn't it? I mean, it seems like there's no perfect answer here because Georgia-Pacific, even not for prospective reasonable royalty, for past infringement, makes you assume that the patent is infringed and valid, which is precisely why your friend says— because Georgia-Pacific, when you do damages, you already assume the same thing, that the patent is infringed and valid. Right. The jury is instructed to assume the patent is infringed and valid. And then what Judge Ward did here is he looked at the Georgia-Pacific factors to see what might have changed between the 2005 negotiation and the 2011 negotiation to see what would have been a negotiation between the parties on that date. He actually carved out of his Georgia-Pacific analysis the willfulness piece. He said, I'm going to consider 15, but I'm not going to consider willfulness. I'm going to take that up later. I don't think there would be any difference here if the court collapsed that inquiry into one. It's effectively what happened in the Bard case. The Bard decision, this court approved, a rate that was significantly higher than the jury rate, based largely on the change in bargaining position. One other point, Your Honor, which is— Before you get to that, could I just ask you to respond? Your friend cited Amato, the case Amato. Amato was early in the court's jurisprudence in this issue, which is moving along. And what happened in Amato is the court just said, oh, I got a jury verdict. I'm going to treble the rate. I don't really need to do any analysis. And, of course, that's not what Judge Ward did here. He did a very careful analysis. Ultimately, the court may decide that there's some other way to do this. We think that the way that it was done here was perfectly appropriate and within Judge Ward's discretion. And, most importantly, it was agreed to by the defendant in this case. Thank you. Mr. Brogan has some rebuttal time. Yes. I think Your Honors are right. There is no perfect solution here. But the analysis of changed parties shouldn't necessarily presume a trebling or enhancement of that nature. Furthermore, it would be proper in an analysis, if there were an underlying finding of willfulness, to include that in the analysis. Well, Judge Ward did that here. I mean, I know you say repeatedly in your brief he trebled the 0.5%. But the fact is I don't think he would say that he just automatically trebled the damages. He bumped it up, and then he doubled it. And the outcome was the same. But it seems to me that a fair reading of the record here, including his analysis, is that he didn't treble the damages. I think you would agree, Your Honor, that he did do the George Pacific analysis, came up with 0.75%, and then doubled it for willfulness. Leaving aside the willfulness, so that the willfulness – you get to the 1.5 not by just trebling the 0.5, but by doubling what he found was the updated number of 0.75, right? That's correct. And so from our perspective, it should have been 0.75. I know what your – but I just was taking issue with the notion that he automatically said willfulness, treble damages, we're going to go three times 0.5 and get the result here. That's not what his analysis was, right? Right. There's also another important issue in this case that a number of foreign defendants face in this country, which is what to do about their tax obligations when they have an obligation to withhold taxes for – But it's jointly several liabilities, so what's the difference? Depends who writes the check, Your Honor. Well, it depends whose bank account you take it out of. That's right. If I can end the sentence in a preposition. That's correct. If you take the money out of the bank account of Inilox Corp., formerly Chima Inilox Corp. in Taiwan, then that entity has an obligation to withhold taxes for Mondis' benefit. Right, but I'm saying – I'm not saying you write a check. I'm saying somebody executes a writ of garnishment and takes it out of an account. The creditor gets to choose to do that. And if the creditor chose to seek the recovery from Inilox Corp., if it had the assets to pay it, then, Your Honor, that might be the case. Here the evidence is that all of the funds that have been disposited into escrow have come from one single source. That's Inilox Corp. in Taiwan that has the withholding obligation. So to the extent that those funds are going to be used to pay this, then from a tax obligation standpoint, we risk Mondis getting a windfall if that needs to be grossed up, and then Mondis going back to Taiwan and claiming a recovery of a portion of those taxes. That unjustly enriches Mondis and unnecessarily punishes Chima Inilox. If you have no further argument on this case, we will conclude this case, take it under advisement, and we will hear from you.